USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/28/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                              :
KENNETH RADCLIFFE, an individual,        :
CRACKERJACK CLASSICS, LLC, a limited  :
liability company,                                  :      1:16-cv-9511-GHW
                                              :
                            Plaintiffs,      :      MEMORANDUM OPINION
                                              :             AND ORDER
                    -v -                   :
                                              :
WILLIAM WRIGHT, an individual,         :
KEYSTONE FINANCIAL MANAGEMENT, :
INC., a corporation, ROBERT STEVENS, an  :
individual, and SOCIAL LIFE NETWORK,   :
INC., a corporation,                                :
                                              :
                                 Defendants.  :
                                              :
------------------------------------------------------------------ X

GREGORY H. WOODS, District Judge:

       In September 2014, Defendant William Wright held a meeting with Plaintiff Kenneth Radcliffe and others to solicit funds to "clean up" a shell company named SEWC to make it more marketable for a future merger. In exchange for their financial support, Wright promised Radcliffe and Plaintiff Crackerjack Classics, LLC—a limited liability company of which Radcliffe is a member—a controlling interest in SEWC after the anticipated merger. Relying on Wright's representations, Radcliffe and Crackerjack wired $50,000 and $25,000, respectively, to Defendant Keystone Financial Management, Inc., which Wright controlled. Rather than using the Plaintiffs' funds solely for the benefit of SEWC, however, Wright misappropriated $24,000. Plaintiffs never received any interest in SEWC or the entity into which it ultimately merged, and despite numerous requests, have not received a refund of their investment.

       Plaintiffs brought this action asserting a violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and various state common law claims.

Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. In their opposition to Defendants' motion, Plaintiffs withdrew their RICO claim—the only claim arising under federal law. Because neither Plaintiff has alleged an amount in controversy sufficient to establish diversity jurisdiction, and the damages they claim cannot be aggregated, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted.

I.  BACKGROUND

Frank Ottaviani introduced Defendant William Wright, an investor, to Plaintiff Kenneth Radcliffe and non-parties Joseph Radcliffe and Dennis Radcliffe[1] in the late summer of 2014. Amended Complaint ("Am. Compl.") (ECF No. 41) ¶¶ 12-13. In September 2014, Wright traveled to New York for a meeting with the Radcliffes and Ottaviani. *Id.* ¶ 13. The purpose of the meeting was to secure funding for the "clean up" and reorganization of a publicly traded shell company, SEWC, in anticipation of a merger. *Id.* ¶ 54(2). Wright represented to Plaintiffs that their funds would be used exclusively for the clean up of SEWC, and that they would be repaid for their investment with a "valuable controlling position" in the company after its reorganization and merger. *Id.* ¶ 15. To that end, on September 12, 2014, Plaintiff Crackerjack Classics, LLC ("Crackerjack") wired $25,000 to Defendant Keystone Financial Management, Inc. ("Keystone"), a corporation of which Wright is a principal and majority shareholder. *Id.* ¶¶ 7, 18. Soon after, Wright warned that Crackerjack would be in jeopardy of losing the deal if Wright did not immediately receive an additional $50,000. Radcliffe Decl. ¶ 6. On October 7, 2014, Radcliffe made the requested $50,000 payment to Wright out of his personal account. Am. Compl. ¶ 19. Plaintiffs incurred an additional $30 each in banking fees as a result of these transactions. *Id.* ¶¶ 18-19.

---

[1] Joseph Radcliffe and Dennis Radcliffe, together with Plaintiff Kenneth Radcliffe, are the sole members of Plaintiff Crackerjack Classics, LLC. Decl. of Kenneth Radcliffe ("Radcliffe Decl.") (ECF No. 58) ¶ 2.

2

Upon receipt of Plaintiffs' funds, Wright transferred $10,000 to Ottaviani and $14,000 to himself as "commission[s]," and transferred the balance to Defendant Robert Stevens, who was acting as a "receiver" for SEWC.  *Id.* ¶ 21.  Plaintiffs never received any interest in SEWC or the entity into which it ultimately merged, Defendant Social Life Network, Inc. (hereinafter referred to by its trading symbol, "WDLF").  *Id.* ¶¶ 22, 36.  Wright, on the other hand, "has received shares in WDLF in exchange for having transferred $51,000 of Plaintiffs' funds to Stevens."  *Id.* ¶ 34.  Despite numerous requests, Plaintiffs have yet to receive a refund of their investment.  *Id.* ¶ 24.  Plaintiffs now allege that Wright "never intended the SEWC transaction to come to fruition," and that he has "repeatedly and continuously used Keystone as a vehicle for Defendants' fraudulent conduct."  *Id.* ¶¶ 28, 38.

## II.  PROCEDURAL HISTORY

On December 9, 2016, Plaintiffs commenced this action against Defendants Wright, Keystone, Stevens, WDLF, and CGrowth Capital, Inc.[2]  Compl. (ECF No. 1).  In June 2017, Plaintiffs amended their complaint, bringing claims for:  (1) a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c); (2) unjust enrichment; (3) fraud; and (4) civil conspiracy.  Am. Compl. ¶¶ 40-63.  On September 15, 2017, Defendants moved to dismiss Plaintiffs' action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Defs.' Mot. to Dismiss (ECF No. 51).  Plaintiffs opposed Defendants' motion on October 6, 2017, and in their opposition, Plaintiffs affirmatively withdrew their federal RICO claim.  Pls.' Mem. Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") (ECF No. 57), at 6-8.  On October 13, 2017, Defendants submitted a reply to Plaintiffs' opposition.  Defs.' Reply Mem. in Supp. of Mot. to Dismiss (ECF No. 60).

---

[2] The parties later stipulated to the dismissal of Defendant CGrowth Capital, Inc., a corporation also controlled and directed by Defendant Wright.  Stipulation of Voluntary Dismissal (ECF No. 44).

## V.     DISCUSSION

### A.  Withdrawal of RICO Claim

Plaintiffs have effectively withdrawn their RICO claim, which was the only basis for the Court to exercise federal question jurisdiction under 28 U.S.C. § 1331.  In their opposition, Plaintiffs wrote that they voluntarily withdrew their RICO claim, noting that they no longer had a legal basis to sustain arguments in support of it.  *See* Pls.' Opp'n at 6, 8 (conceding that Defendants no longer "satisf[ied] the test for open-ended continuity" and that Defendants no longer "pose[d] any threat of continuing criminal activity").  Defendants contest Plaintiffs' withdrawal of the RICO claim, requesting instead a dismissal of the claim with prejudice under Fed. R. Civ. P. 12(b) or 41(a)(2).  However, under Fed. R. Civ. P. 41(a)(1)(A)(i), if the opposing party has not yet served either an answer or a motion for summary judgment, a plaintiff may dismiss claims without leave of the court or the opposing parties' consent by filing a notice of dismissal.  "It is well established that a motion to dismiss under Rule 12 does not terminate the right of dismissal by notice." *Arndt v. UBS AG*, 342 F. Supp. 2d 132, 136 (E.D.N.Y. 2004) (internal citations, quotation marks, and alterations omitted).  Therefore, Plaintiffs effectively withdrew their RICO claim, and that claim is dismissed without prejudice.

### B.  Subject Matter Jurisdiction

Defendants have moved to dismiss this action under Fed. R. Civ. P. 12(b)(1).  "'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [Court] lacks the statutory or constitutional power to adjudicate it.'" *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  The plaintiff bears the burden of establishing jurisdiction in a Rule 12(b)(1) motion, and the plaintiff must meet that burden by a preponderance of the evidence. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  "'[J]urisdiction must be shown affirmatively, and that showing is not made by drawing

from the pleadings inferences favorable to the party asserting it.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id.* (citing *Makarova*, 201 F.3d at 113).

    a. <u>Amount in Controversy</u>

Plaintiffs' claims do not individually meet the amount in controversy requirement for diversity jurisdiction, and the claims cannot be aggregated. A federal court may exercise diversity jurisdiction over a civil action where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a). The Supreme Court has long recognized that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." *Snyder v. Harris*, 394 U.S. 332, 335 (1969); *see also Pinel v. Pinel*, 240 U.S. 594, 596 (1916) ("The settled rule is that when two or more plaintiffs having separate and distinct demands unite in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount. . . .").

However, there is an established "common fund" exception to this non-aggregation rule, which allows aggregation in "cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest." *Snyder*, 394 U.S. at 335. "[T]he 'paradigm cases' allowing aggregation of claims 'are those which involve a single indivisible res, such as an estate, a piece of property (the classic example), or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res." *Gilman v. B.H.C. Sec., Inc.*, 104 F.3d 1418, 1423 (2d Cir. 1997) (citation and internal quotation marks omitted). In *Gilman*, the Second Circuit held that separate pre-litigation transactions could not be aggregated to meet the amount in controversy requirement, explaining that "what controls is the nature of the

5

right asserted, not whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs." *Gilman*, 104 F.3d at 1423, 1427.

Plaintiffs here are separate legal entities. Radcliffe is an individual, and Crackerjack Classics, LLC is a limited liability company with three members, one of whom is Radcliffe. Radcliffe Decl. ¶ 2. Crackerjack seeks compensatory damages for the $25,000 it wired to Keystone on September 12, 2014. Am. Compl. ¶ 18. Radcliffe seeks compensatory damages for the $50,000 he wired to Keystone on October 7, 2014. *Id.* ¶ 19. Plaintiffs are not seeking recovery of shares in SEWC, the "valuable controlling position" in SEWC they were allegedly promised, or injunctive relief of any kind. Instead, they are seeking money damages for each of their separate, cash investments. The common fund exception does not apply to these claims because there is no title or right in which Plaintiffs share an undivided interest; rather, the investors—Radcliffe and Crackerjack—are seeking vindication of their individual rights to recover the amount that they each deposited from their own accounts on different dates to purchase an interest in SEWC. *See, e.g.*, *Monahan v. Pena,* No. 08-cv-2258-JFB, 2009 WL 2579085, at *6 (E.D.N.Y. Aug. 18, 2009) (concluding that the common fund exception did not apply where 27 individual real estate investors sought to recover the amount that each individual invested in a real estate development); *Gilman*, 104 F.3d at 1420 (concluding that the common fund exception did not apply where a group of investors brought fraud claims arising out of their separate, pre-litigation transactions with the defendant). Therefore, because the Plaintiffs are each seeking vindication of individual rights, each must independently satisfy the jurisdictional amount under the non-aggregation principle. Neither Plaintiff does so.

Although Plaintiffs seek punitive damages in addition to actual damages, the same non-aggregation rule applies to punitive damages. *Gilman*, 104 F.3d at 1430 (collecting cases). Thus, unless the inclusion of punitive damages for either Plaintiff's claim would raise the amount in controversy as to that Plaintiff above $75,000, the inclusion of punitive damages does not save

Plaintiffs' claims.  Here, Plaintiffs simply assert that they seek to recover punitive damages without stating the amount they seek.  Am. Compl. ¶¶ 52, 57, 63.  This assertion does not bring Plaintiff's claim above the amount in controversy requirement.  *See, e.g.*, *Lastih v. Elk Corp. of Alabama*, 140 F. Supp. 2d 166, 170 (D. Conn. 2001) ("Plaintiff's prayer for punitive damages does not state a dollar amount, and defendant does not allege facts adequate to establish that the amount in controversy would be met by an award of punitive damages.").

      b.  <u>Diversity of Citizenship</u>

Plaintiffs have also failed to establish complete diversity of citizenship between the parties because they did not allege Defendant WDLF's state of incorporation.  To adequately establish diversity jurisdiction when a corporation is a party, a plaintiff must allege both the state of incorporation and of the principal place of business of a corporation.  *See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 59, 64 (2d Cir. 2009).  Where a corporate party's state of incorporation is not identified in the complaint, the pleadings are inadequate to establish diversity of citizenship.  *See, e.g.*, *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1027 (2d Cir. 1992).  In the complaint, Plaintiffs alleged that WDLF's principal place of business is Colorado, but did not allege its state of incorporation.  Am. Compl. ¶ 6.  Plaintiffs failed to submit any evidence regarding WDLF's state of incorporation even after Defendants raised the issue in their motion to dismiss.  As such, Plaintiffs have failed to establish complete diversity of citizenship.

**C.  State Law Claims**

Under 28 U.S.C. § 1367(c)(3), supplemental jurisdiction over state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction."  The Second Circuit counsels *against* exercising supplemental jurisdiction in such a situation:  "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state

7

claims should be dismissed as well." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 183 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991)).

Because Plaintiffs' dismissed their sole claim arising under federal law pursuant to 28 U.S.C. § 1331, and there is no other basis for federal jurisdiction over this case, the Court declines to exercise its supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).

## VI. CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss, ECF No. 51, is GRANTED, and the case is dismissed without prejudice.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: June 28, 2018
New York, New York

_____
GREGORY H. WOODS
United States District Judge